(Nos. 11474-11475.—Reversed and remanded.)

William T. Monroe, Defendant in Error, vs. Gustave A. Becker, Plaintiff in Error.—William T. Monroe, Defendant in Error, vs. Bertha B. Orr, Plaintiff in Error.

*Opinion filed February 20, 1918—Rehearing denied April 3, 1918.*

1. Debtor and creditor—*at common law an heir was not liable for his ancestor's debts unless expressly bound in specialty.* At common law an heir was not liable for the debts of his ancestor generally, but only on specialties in which the ancestor expressly bound his heir.

2. Same—*character of judgment against an heir for ancestor's debt.* At common law the liability of an heir for the debt of his ancestor was limited to the value of the property descended to him, and the judgment was to be levied only on the lands descended unless the heir should plead *riens per descent* or other plea which he knew was false, or judgment was given against him by *nil dicit* or *non sum informatus,* or by confession, without showing what lands he had by descent, in which cases the judgment was personal.

3. Same—*what averments unnecessary in suit at common law against an heir for ancestor's debt.* In an action at common law against an heir for the debt of his ancestor the plaintiff was not required to aver that the heir had any assets by descent but only to describe the defendant as heir-at-law, and it was not necessary to allege that the personal representative had no assets, as that fact was no defense.

4. Same—*what required to be pleaded by heir in action at common law for debt of ancestor.* In an action at common law against an heir for the debt of his ancestor it was for the heir to plead *riens per descent* or to confess the action and show the certainty of the assets by description, so that execution might be levied on the lands.

5. Same—*riens per descent was a good defense at common law although the heir had sold the land.* At common law, if an heir had aliened the lands he inherited before the bringing of an action against him for his ancestor's debt the creditor had no remedy, and the heir might plead *riens per descent* when the suit was commenced, which was a perfect defense.

6. Same—*the statutory provisions for action against an heir are cumulative to common law remedy.* The provisions of sections 12 and 13 of the Statute of Frauds, relating to an action against an heir for his ancestor's debt, are cumulative to the common law remedy and furnish additional remedies to the creditor, but by the

statute the liability exists only when the personal estate of the ancestor is insufficient.

7. SAME—*what is a proper reply, under statute, to plea of "riens per descent at commencement of action."* Where an heir who is sued for his ancestor's debt pleads *"riens per descent* at the commencement of the action," the creditor, under the Statute of Frauds, may reply that the heir, before the beginning of the action, had lands by descent from the ancestor which would have satisfied the debt, concluding with a verification, or that the heir at the beginning of the action had such lands wherewith he ought to have satisfied the debt, concluding to the country, but a replication re-affirming the declaration is not adapted to the plea and does not form a proper issue to authorize a personal judgment under the statute.

8. SAME—*homestead and dower conveyed to heirs not subject to ancestor's debts.* Homestead and dower rights conveyed by the widow to the heirs are not subject to the debts of the ancestor.

9. SAME—*when judgment against heirs for ancestor's debt is erroneous.* Where the issue formed by the pleadings in an action against heirs for the debt of their ancestor does not authorize a personal judgment and the evidence does not show the value of the property which descended to the heirs there is no basis for a direction to the jury to find the value of said lands, and in such case a judgment against the heirs is erroneous.

10. EVIDENCE—*inventories are not evidence against any party except the party making them.* Inventories are competent evidence against the party making them, tending to show what property the deceased owned at his death, but they are not evidence against any other person.

11. EXECUTORS AND ADMINISTRATORS—*administrator cannot put valuation on real estate as against heirs.* The administrator takes nothing in respect to the real estate except the naked right to sell the same when necessary to pay debts, and the law does not authorize him, as against the heirs, to put a valuation upon real estate which passes to them.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal and writ of error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

WILLIAM E. CLOYES, and FRED B. MERRILLS, for plaintiffs in error.

Rosenthal, Kurz & Houlihan, and Edward R. Tie-
debohl, for defendant in error.

Mr. Justice Cartwright delivered the opinion of the
court:

William T. Monroe brought an action of debt in the
circuit court of Cook county against Clare A. Orr and the
widow, administrator and heirs-at-law of Charles Becker,
deceased, to recover from them the amount due on an at-
tachment bond executed by Charles Becker. The plaintiffs
in error, Gustave A. Becker and Bertha B. Orr, were two
of the four heirs-at-law. All of the defendants except the
plaintiffs in error were dismissed out of the case before
the trial, and the issues at that time were formed under
two additional counts to the plaintiff's second amended dec-
laration. On the trial the first additional count was with-
drawn and there was a verdict for the plaintiff, upon which,
after *remittiturs* by the plaintiff, separate judgments were
rendered against plaintiffs in error for $2281.25 each, with
costs. The defendant Bertha B. Orr appealed to the Ap-
pellate Court for the First District, and Gustave A. Becker
took the record to that court by writ of error. The appeal
and writ of error were consolidated in the Appellate Court
for hearing and the judgments were affirmed. This court
granted writs of *certiorari* to bring the record to this court
for review, and the cases were again consolidated in this
court for hearing.

Some of the questions argued by counsel depend upon
the state of the pleadings. It was the understanding at the
trial, and counsel for both parties now insist, that the action
was at common law and not under the provisions of the
Statute of Frauds and Perjuries, and that the issues were
formed according to the practice at common law.

The second additional count, upon which the case went
to the jury, alleged that on June 22, 1906, Charles Becker
executed a bond in the penalty of $12,000 to release prop-

erty in the hands of the garnishees in an attachment suit brought by the plaintiff in the circuit court of Cook county against Clare A. Orr; that Charles Becker died intestate on January 2, 1908; that more than a year thereafter judgment was recovered in the suit against Orr at the June term, 1909, for $3500 and costs; that Charles. Becker left surviving him the defendants Gustave A. Becker and Bertha B. Orr and two other defendants not served with process in this suit and dismissed therefrom, as his only heirs-at-law; that on January 6, 1908, letters of administration were issued on the estate of Charles Becker to the defendant Gustave A. Becker, and the time for filing claims expired on January 7, 1909, before the judgment in the attachment suit was rendered; that at the time of his death Charles Becker was seized of real estate in this State of the value of over $100,000, which by the laws of descent, after the payment of claims filed in the administration, passed to the heirs-at-law, and that no estate of Charles Becker not inventoried or accounted for by the administrator had been found.

There were numerous pleas, but the only one now involved or relating to the liability of the defendants was the ninth, which was as follows: "And for a further plea defendants say *onerari non*, because they have not, nor did either of them have at the time of the beginning of this suit, any lands, tenements or hereditaments, or rents or profits out of the same, by descent from said Charles Becker in fee simple; and this they are ready to verify if they, as heirs of said Charles Becker, deceased, ought to be charged with said debt, or any part thereof, by virtue of said supposed writing obligatory."

At common law an heir was not liable for the debts of his ancestor generally, but only on specialties in which the ancestor expressly bound his heir. (*Ryan* v. *Jones,* 15 Ill. 1.) The liability of the heir was only to the extent of the value of the property descended to him, and the judg-

ment was to be levied on the lands descended unless the heir should plead *riens per descent* or other plea which was false within his own knowledge, or in case judgment should be given against him by *nil dicit* or *non sum informatus,* or by confession without showing what lands he had by descent, in which cases the judgment was personal. (*Muldoon* v. *Moore,* 55 N. J. L. 410; 9 R. C. L. 104.) It was not necessary for the plaintiff to aver that an heir had any assets by descent but he need only describe the defendant as heir-at-law, and it was not necessary to allege that the personal representative had no assets. (2 Chitty's Pl. 468.) It was for the heir either to plead *riens per descent,*—that he had nothing by descent,—or to confess the action and show the certainty of the assets by description so that execution might be levied on the lands, in which case the judgment was special against the lands. (10 Ency. of Pl. & Pr. 34.) If the heir had aliened the lands which he had by descent before the action was brought the creditor had no remedy against him, and he could plead *riens per descent* when the suit was commenced, which was a perfect defense. (*Roosevelt* v. *Heirs of Fulton,* 7 Cow. 82; *Ryan* v. *Jones, supra.*) By the act of 3 and 4 William and Mary, chap. 14, the remedy for the creditor was enlarged and extended to debts of the ancestor generally, and our Statute of Frauds and Perjuries has likewise extended common law remedies. Section 12 provides that when any lands shall descend to any heir and the personal estate of the ancestor shall be insufficient to discharge the just demands against the ancestor's estate the heir shall be liable to the creditor to the amount of the lands descended, and in all cases where the heir is liable, if he shall sell, alien and make over the same before any action shall be brought he shall be answerable to the value of the lands aliened or made over, and execution may be taken out against him to such value as if the same were his own proper debts and the lands are not liable to execution. Section 13 provides that when any action is

brought against an heir he may plead *riens per descent* at the time of the commencement of the action, and the plaintiff in such action may reply that he had lands from his ancestor before the commencement of the action, and if the issue is found for the plaintiff the jury shall inquire of the value of the lands descended and judgment shall be given and execution awarded as previously provided, which refers to the personal judgment for the value of lands aliened, as specified in section 12. These provisions of the statute are cumulative to the common law remedy and furnish additional remedies to creditors. (*Mackin* v. *Haven*, 187 Ill. 480.) In one respect, at least, the statute fixes the liability of heirs for the debts of ancestors different from the common law, by the provision that liability shall only exist where the personal estate of the ancestor is insufficient to discharge the just demands against the estate, whereas at common law it was not necessary to allege that the personal representative had no assets, or if he had a sufficiency it was no defense for the heir. The declaration, in substance, conforms to the statute by showing that the claim did not accrue within such time that it could be presented against the estate and that there were no subsequently discovered assets, which facts were equivalent to the statutory condition and authorized the bringing of the suit. Also, the declaration alleged the descent of lands of the value of over $100,000, which by the laws of descent, after payment of claims, passed to the defendants as heirs-at-law, whereas at the common law it was never required that the declaration should aver that assets had descended. While the declaration was framed according to the statute it also contained the elements of a declaration at the common law.

The defendants did not plead *riens per descent* generally, as they might have done at the common law or under the statute denying the inheritance, but pleaded *riens per descent* at the commencement of the action, which was a good plea at common law. The plaintiff could have replied,

according to the statute, that defendants before the commencement of the action had lands by descent as heirs of Charles Becker, whereby they might have satisfied the plaintiff his debt, and conclude with a verification, or might have replied that the defendants had at the commencement of the action sufficient lands by descent wherewith they could and might and ought to have satisfied the debt, concluding to the country. (3 Chitty's Pl. 1174.) The plaintiff did neither but filed a replication re-affirming the declaration, as follows: "Plaintiff says as to plea numbered 9 of said defendants, that they did have certain lands, tenements or hereditaments, or rents or profits out of same, by descent from said Charles Becker, as alleged in plaintiff's declaration, and this plaintiff prays may be inquired of by the country." The plea did not traverse the averment of descent in the declaration, which would have been the common law form of plea where the descent was disputed in order to put that fact in issue, but the plea was proper in case the land had been aliened and the replication was not adapted to the plea and did not form a proper issue under it to authorize a personal judgment under the statute. The case cannot be treated as one where the parties go to trial without a formal replication making an issue on a plea, because, first, the plaintiff filed a formal replication to the plea and cannot be regarded as merely omitting to file a replication; second, an issue could only be formed, as already pointed out, by different replications either taking issue on the plea and concluding to the country or following the statute and concluding with a verification, and which one was chosen cannot be determined; and third, no rule of pleading would justify an assumption that an issue was formed by a replication, under the statute, affirmative in form and requiring a rejoinder to form an issue.

The plaintiff proved the giving of the bond, the death of Becker and that the defendants were his heirs and the judgment in the cause in which the bond was given. To

prove the descent of property as alleged in the declaration the plaintiff offered in evidence the letters of administration issued to Gustave A. Becker, in which the homestead in Belleville, in St. Clair county, was set down with a valuation of $6000 and one-eighth interest in Arsenal island at a valuation of $3125, and plaintiff also offered in evidence the application for letters showing that Charles Becker left a widow. The defendants proved that the property in Belleville was the homestead of Charles Becker and that he left a widow, who before the suit was brought conveyed her homestead right and dower to the heirs-at-law. The valuation put down in the inventory was not binding upon the defendant Bertha B. Orr, and as to both defendants the property was encumbered by homestead and dower, so that the value of the property which descended to the heirs was not shown. Inventories are competent evidence against the party making them, tending to show what property the deceased owned at his death, (*Bailey* v. *Robison,* 233 Ill. 614,) but they are not evidence against any other person. The administrator takes nothing in respect to the real estate except the naked right to sell the same when necessary to pay debts, and the law does not authorize him to put a valuation upon real estate which passes to the heirs, as against them. The homestead right and dower which the widow conveyed to the heirs did not descend to them from Charles Becker and was not subject in their hands to his debts. There was no legitimate evidence of the value of the property which descended, but the court directed the jury to find, from the evidence, the value of the lands, tenements, hereditaments, or rents and profits out of the same, that descended to each of the defendants Gustave A. Becker and Bertha B. Orr, and the jury found such value to be $2336.16 as to Gustave A. Becker and $2336.17 as to Bertha B. Orr.

The judgments against the defendants were personal, and it is argued by counsel for the defendant in error that personal judgments were authorized by the common law

283 — 4

rule that where an heir pleads *riens per descent,* which is false within his own knowledge, and the issue is found against him, the judgment is to be general. (*Jefferson* v. *Morton,* 2 Saund. 6; Bacon's Abr.—Heir and Ancestor— 626; 10 Ency. of Pl. & Pr. 35; *Muldoon* v. *Moore, supra; Roosevelt* v. *Heirs of Fulton, supra.*) The Appellate Court applied that rule and affirmed the personal judgments on the ground that the plea of the defendants was knowingly false. Whether the common law rule is applicable, under our practice, in any case we do not say, but it was not applicable in this one. At the common law the plaintiff did not allege the descent of assets, and the defendants might confess the action and show the certainty of assets by describing the lands descended so that the plaintiff could take out execution against them, but in this case the plaintiff alleged the descent of lands in this State of the value of over $100,000, and there was no traverse of that allegation. It was not in dispute at the trial, but the defendants insisted that if there was judgment it must go against the lands, and that there could be no judgment of that character because there was no evidence that the lands were within the jurisdiction of the court. That was the position insisted upon during the trial. In *Branger* v. *Lucy,* 82 Ill. 91, it was held that heirs-at-law who had not sold or aliened any part of the land nor received any rents or profits therefrom were not subject to a personal judgment, and in that case no other judgment could have been rendered against the defendants than one to be satisfied only out of the real estate which descended. That was an action against the heirs and an administrator and the judgment was against the heirs, only. That doctrine was indorsed in *People* v. *Brooks,* 123 Ill. 246, which was a suit against an heir-at-law. It does not appear that a false plea of *riens per descent* had been filed in either of those cases, but there was no plea in this case that the defendants took nothing by descent from the ancestor. There was no basis in the evidence for the direc-

tion to the jury to find the value of the lands descended, and whether, under the pleadings, the action is to be regarded as at common law or under the statute, the judgment was erroneous.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*